If it pleases the Court, my name is Russ Winner. I'm co-counsel for the plaintiffs in this case. The plaintiffs are actually a plaintiff and a third-party plaintiff. My co-counsel is Myron Anksman. He's an attorney in Bethel, the regional hub in western Alaska. Mr. Anksman asked me to convey his disappointment and regret that he couldn't be here today. He had hoped to listen in telephonically, but that apparently couldn't be arranged. Do we still have a courthouse in Nome that we could use? Yes. We do? Okay. We'll keep that in mind the next time we're up. I'd like to reserve five minutes for response. Just to briefly set the stage for this case, in 1996 the city of Quinnahock and the tribal entity for Quinnahock, it's the native village of Quinnahock, I'll call it the tribe for purposes of this argument, entered into a memorandum of agreement. Under it, the city transferred or delegated to the tribe the performance of all city functions. But the MOA made it clear that the city did not dissolve, it wasn't being terminated, and the tribe was authorized to enforce all city ordinances. The purpose of the MOA was to streamline administration of governmental functions in the city and to save costs and to allow the city to continue to get money from the state of Alaska through state revenue sharing and through payment in lieu of taxes, two different state programs that allowed money to be paid. So there was a financial incentive for the city to remain in existence. Exactly. Okay. Well, as I understand, the city was to perform the minimum requirements spelled out under the Alaska statutes to retain the status of a second-class city. Right. But that the tribe, which is what you call them so I'll call them, took on the role of law enforcement for the community right under the agreement. They enact their own tribal code, and it's their own tribal code which has the curfew. There's two curfew ordinances in place at the time of this accident. But the tribe had its own curfew, right? The tribe had a curfew. The city had a curfew. The city's curfew was not. But it instituted its own tribal court to enforce its own rules, as I understand it. Right. Yes. And the tribal court was empowered and had authority to also enforce the city's ordinances. I understand. But we did have a curfew. We did have a tribal code. We did have a tribal court. And the United States has said, as I understand it, that Mr. Johnson is their employee. He was, yes, he was deemed to be. They substituted in. Exactly. Saying he was their employee. Right. Right. So he was. . . Despite that? No. Do you disagree with that? Well, what happened is the federal. . . I didn't ask you what happened. Do you disagree that he was the employee of the government? No. The plaintiffs agree that he was properly deemed to be an employee of the federal government by virtue of the Federal Tort Claims Act and the Indian Self-Determination Act. Not employed by the city. Employed by the village. Yes. Deemed an employee of the government. Correct. Right. And so for that reason, the case was the federal government substituted for the tribal police officer and removed the case to federal court. Why is the city then responsible for Native Village? Because. . . Is that the key question? That is the key question. He. . . They're an independent contractor, right? Native Village? Right. So that would make them shielded from a liability under Seavers v. McClure? Well. . . Yes. No. Yes, unless you have an exception. It's a non-delegable duty. Well, I understand, but that's an exception. That is the exception. You're going to argue it's an exception. Yes. I understand.  But I'm just trying to put it in perspective. There is no liability unless you can make an exception. Yes. Right. And there is one. It's the non-delegable duty. Well, I understand what your argument is. I just want to make sure that we're not disagreeing where you're going. Right. I'm just curious, and I hope this doesn't divert the discussion, but is this any different from what we see down, for example, in Los Angeles County where cities contract with the Sheriff's Department to provide police services rather than have their own police department? We see a slug of 1983 actions against the L.A. County Sheriff in those situations, but I've never seen a claim brought against the underlying city. I'm not sure I understand the context of this. Well, I mean, I'm trying to. . . Maybe this is different because we're dealing with Native American tribes that have been delegated duties under Alaska law from a second-class city. Maybe that makes a difference, but I'm sure Judge Tashima probably has more experience with this than I do, having sat as a district judge down there, but this is a very common arrangement, as I understand it, in Los Angeles County for incorporated cities that, for whatever reason, don't want to incur the expense of running their own police and fire departments. They just contract with the county to supply sheriff's deputies to enforce the law under the city limit. Well, cities can do that. The question then, as Judge Tolman says, I think it's pretty rare then for the city to be held liable for the actions of the deputy sheriff enforcing, say, police city ordinances. The non-delegable duty doctrine would say that in that situation the city retains responsibility, even though it's delegating police functions to a county government. Well, I don't think there is any common law that says that. I think we look to the state statutes or that law which would suggest it, and in California it could be different than Alaska, but I don't think you can just say as a general theory that it automatically happens because that's your big problem here, as I understand it, is what is your best case to suggest that this duty is a non-delegable duty in Alaska because we're looking for statutes here. Okay. It may well be. I'm not familiar with the California situation. There may be a statute that authorizes this and shields the city from liability when it delegates police functions to a county. In Alaska there's no such statute. In Alaska there is case law that talks about non-delegable duty. And it talks about case law and non-delegable duties as it relates to independent contractor physicians or emergency care physicians or hospitals. Yes. But there's nothing that directly addresses this, is there? That's true. And, in fact, the best we can do to suggest that this is so is to try to put those cases that deal with hospitals and doctors into the middle of this situation. I would say that what's your best case that makes this case the exact one? I mean, I couldn't find an Alaska case that suggests that this situation is absolutely non-delegable because we've got physicians, we've got hospitals, I've got Ward, I've got Jackson, but I've got nothing that says it applies here. So Jackson talks about the kinds of things that are non-delegable, and one of the examples given is imposed by a statute, a bylaw, or another external source. Or maintenance of roads is an example given in the Jackson case. Okay, it's dicta, but it's... I'm going to say I don't think that was there. I mean, what I'm trying to do is narrow you down here now because if I look at what the city has a right to do or not has a right to do, I don't even think the city has to have a police force. It doesn't. But once it undertakes... I mean, I don't even think the city, if it doesn't even have the resources to do it, has to do anything for the police. In fact, the statute says if you want to put a VPO together and you've got enough money to do it, well, then you could do it. But if you don't have enough money, you don't even have to do it. But once they do it, once they have a police force or delegate their police functions to somebody else, and once that somebody else is enforcing a city ordinance, which is what was happening here, in part a city ordinance and simultaneously a tribal ordinance, it's a non-delegable duty. What's the best source you have of the city's duty to enforce a curfew? Well, Your Honor, I haven't found a case that speaks specifically to that. I haven't either. That's why I was hoping you'd help me. I don't think there is one. I mean, in order to get to your point of view, I've got to have something that says the city has a duty to enforce a curfew. The best I can come up on that is the opportunity to have a police department, and you and I just went through that. They don't even have to do that. Right, but once they have a police department and once the police are enforcing a city ordinance, and this is considered to be an infraction, a crime, if you will, once the city is contracting in Alaska with an independent contractor to enforce a city criminal ordinance, it's a non-delegable duty. Does the memorandum ever say that the city grants its police power to the tribe? Effectively, yes. What's the best language you've got for that? I've got a language that says the tribe agrees to be responsible. They agree to provide a law enforcement protection, but I've got nothing in here that says that the city grants to the tribe its power. NVK tribal police are authorized to enforce all municipal laws and ordinances in the same capacity as a village police officer or city police. That's the best you have. I'm really looking at it very carefully to try to decide because it seems to me that if I had in this agreement the city grants to the tribe its law enforcement powers, then at that point I got a chance to say that if the city ever had a duty to get a VPO, it could and the funds could get it, then they might have something. But it's quite a different suggestion when I say the tribe can do whatever they want to do and the city says the tribe can or they agree to provide law enforcement protection. They'll even enforce city rules. That's not the same. I'm just asking you to reply. I mean, I can't find it to be the same. In this situation, we've got witnesses, the former tribal police chief, saying what was being enforced here was a city curfew. Well, but just a minute. I don't know whether I can even get all that tribal police stuff in this record or all these tribes saying what the agreement says. You've got to tell me the agreement's ambiguous for me to even take any evidence other than just look at it and interpret it. That's what I did. And that's why I'm asking you the questions. I can't argue, and I don't think you've argued, that this agreement is ambiguous. I don't think it's ambiguous. Okay. Then I can't take anybody else's testimony about what it says or it doesn't say and put it in the record because at that point I'm making it ambiguous and I'm trying to determine what it says. I can read what it says. Maybe I'm not understanding your question. Could you restate the question? Well, all I'm trying to do is when I interpret a document, if it's ambiguous, then I take testimony from other parties to tell me what it says. If it isn't ambiguous, if it's clear and unambiguous on its face, then I don't look at anybody else's testimony about what it says. I read it. And if it says it, it does, or if it doesn't, it doesn't. It's essentially a parole evidence rule. Yes, I understand. And in our view, this memorandum of agreement is clear in saying that city functions are to be performed by the tribe as an independent contractor, including police functions. And when you've got under the authority of that memorandum of agreement, when you've got a tribal police officer enforcing a city ordinance, which we have direct testimony of what was happening here, the legal question then becomes is that a non-dedicable duty? Can the city be held responsible for that? Can the city rent a cop and say even though it's our law that this police officer is enforcing, we're not responsible for what he's doing? If the city had done nothing and just left it to the Alaska State Troopers, could the Alaska State Troopers have enforced a city ordinance? I don't know the answer to that. The materials that I read in preparation for the argument suggested that they could, but because of resource problems, they probably wouldn't waste their time. Yeah. But I think they have the authority under state law to do it. Now, whether or not that's delegated by the city or is simply an empowerment by the state legislature in creating the office of Alaska State Troopers. So the question then would be if the troopers did this and they were negligent, could we still go after the city? Yeah. I've never heard of the troopers enforcing a local law. That may be the practical result. I'm not sure it's going to answer our legal question. Why don't you think about that while we hear from the city? And frankly, Counselor, I want to congratulate you. I felt like you were trying to answer my questions and you dead on came back and answered, and I appreciated that rather than Wiley-Niley going here and there to avoid the answer. Well, you guys are the ones deciding this case. That's what it's all about. We're just looking for your help in trying to figure out what the right answer is. All right. Let's hear, I guess it's Ms. Ringstadt. Yes. I represent the city of Quinnahawk. And, you know, Alaska tort reform in 1989 and 1997 has made it clear that we're a pure several liability state. I'm sorry. We're a pure liability? Pure several liability state. Joint and several liability does not exist except for a few exceptions that actually haven't even been squarely addressed by the Alaska Supreme Court. Respondent superiors is being used, but it hasn't even been squarely addressed how that fits in with a pure several liability state. And that is the language that the Alaska Supreme Court has used in more than one case. And as the Justice — Where does that get us on the questions that we're wrestling with here? The non-delicable duty doctrine is a doctrine of vicarious liability. Yes. Which does not — is not consistent with pure several liability because the city is being asked to be held responsible for the negligence of Derek Johnson. And this court has recognized in Alaska, as well as the district court in 2012, Wolkoff v. United States, and I think Palitzky for this court, that in Alaska the non-delicable duty doctrine is a doctrine of vicarious liability. The non-delicable duty doctrine — I guess I'm having a tough time. Are you saying there's an Alaska case that says because of your allocation of duties that vicarious liability cannot apply? I don't think that that has been addressed by the Alaska Supreme Court, how that fits in with the scheme of pure several liability. But the non-delicable duty — I appreciate I'm an Idaho guy, not an Alaska guy, so I kind of understand this law just a little bit. And I guess I'm still back to the same idea. Vicarious liability, as I understand it, is absolutely where we're going here. And I would say in general that we're not going to make the city responsible for Native Village's actions because Native Village is an independent contractor unless they have in some way delegated a duty that they cannot delegate and get out under independent contractor status. Exactly, and that would be the exception to the non-delicable duties doctrine, which in Alaska has been applied to create vicarious liability in two cases. Once was in 1977 in Alaska Airlines v. Suite when they applied it to the airlines. The second time was Jackson v. Powell, which was in 1987. So both of those were before tort reform. With respect to the hospital's operation and emergency room, the legislature overruled that by statute in 1997. So at this point, it only creates vicarious liability in the case of the airlines. Well, the thing that strikes me odd about the non-delegable duty argument is that if there is no obligation on the part of the city to even have a police force, let alone enact a curfew ordinance, then it seems odd to say that the city is unable, if it decides it wants a curfew ordinance, to delegate the enforcement of that ordinance to the tribe. In Jackson v. Powell, when looking at the doctrine, the coordinate state, in order to have a non-delegable duty, you must first have had a duty. Exactly. And I guess you put it better than I did. If there is no duty to even have a police force, how can this be a non-delegable duty? If you look back historically, the reason why the memorandum and agreement came about is because the city had no resources. It was going to shut down and the tribe was taking over. The first thoughts they were having was just completely disband the city. They decided to keep it after talking to the Department of Resources. To keep it, there were some benefits for keeping it as a second-class city. So what they decided to do is keep it basically as a city. They maintain a city clerk that's the only city employee. They elect a mayor, and then the community is governed by 14 tribal members. They're all enrolled tribal members of the native village. Seven of them do represent the city on something that may be just city business. But most of their matters they consider as jointly. They are all there, and they try to do most as joint business. So that is what's left of the city. It's basically the city clerk. But it seems to me you need to respond to the counselor's argument that even though they didn't have any duty to have a BPO, they only had a duty to have a BPO if they had any funds, and if they don't have any funds, they don't have any duty, that that necessarily means that because they did have a BPO at one time, that they have delegated that responsibility to someone else. The affidavit is they had a BPO sometimes when they could afford one. I understand. He's suggesting the very fact they had one, that that automatically says they had the duty by having one ever, and they delegated that to the tribe, and they can't get out of vicarious liability with that. The reason before they did the memorandum of agreement, they didn't have resources to have a BPO, and a lot of things were happening during that time. It's supported by the affidavits. And also some newspaper article from 1997, that Anthony Caioli, who was the tribal administrator at that time, said that that was an accurate representation of what was going on. There was a cut in state funding. They had the area's regional corporation had had previously, up until about this time, had had a village public safety officer stationed in Quinhag. And that would be a state-funded position, trained. It's under the State Department of basically with the – they're not a police officer, but they do receive a lot more training from the state than a village police officer receives. It was just an employee of the city. They had had a BPSO stationed there, and that had been – he resigned, and that wasn't going to be replaced. And they'd also had a state magistrate. There's one thing that you have to kind of put into this argument, and that is they did have a VPO. Funds went away. The VPO went away. However, under the 1996 agreement, the city does fund police officers for the tribe. Does it not? The city does put in some money. Well, I think actually they put it into the general fund. As I read the agreement, the city provides the funding to the tribe for the police officers. The city provides some funding that was used to pay for tribal police. It's in their budget. And the federal government provides some funding as well, and the tribe provides some funding. Well, all I'm trying to say is why wouldn't that lead into his argument that once they had VPOs, just when the funds were gone, they didn't have the VPOs. Now they're funding for the tribe to have the VPOs. Well, if you can go with they had a duty, which I don't think they did, but you still have to find that the duty was non-delegable. If they had a duty and, you know, this isn't a claim where they said that the delegation was negligent. If they had a duty to have a VPO, then you have to decide whether or not the duty was non-delegable. And the Alaska Supreme Court has basically said what's required to find the duty was non-delegable. You needed a duty, and in the two situations where they did find it was non-delegable, it was under a comprehensive regulatory scheme like airlines or the hospital's operation of emergency room, where that entity had a semi-monopoly to provide those services. Thirdly, the Alaska Supreme Court has limited its cases to situations of apparent authority, where the plaintiff had gone to the institution seeking these services, and they were provided by the institution. And in both cases, Fletcher, where the court did not impose a non-delegable duty upon the hospital's operating room, made a distinction in that case. And it said it's when the plaintiff goes to the hospital or the airlines as an institution seeking those services and is provided by the institution with the employee. And fourthly, and Fletcher made it clear that it would apply where there was not unnecessary because of other remedies, which is in this case, Derrick Johnson was a tribal employee. The claim against Derrick was against Derrick Johnson and the tribe. The tribe had entered into an Indian Self-Determination Education Assistance Act contract with the Federal Government. His remedy was against the tribe, and the tribe wasn't sued at all in this case. But if it had been, just like with Derrick Johnson, the Federal Government deemed him an employee, and he came in and substituted in for Derrick Johnson, as it would have done for the tribe, and that was where the remedy was. There's no reason to be creating another theory of vicarious liability in this case for the same actions of one actor. The parties to this accident was. Oh, you're arguing Sloan, right, on the alternative remedy? You know, I cited a number of cases, yeah. Okay. That was the best Idaho case I said I found that said if you've got an alternative remedy, you're out. You can't go for vicarious liability. You know, like I said, this is a several liability state. There were three actors in this case, the two girls and Derrick Johnson. And so what they would like to do is impose liability. The Federal Government's already accepted liability for his actions, but they want to do more than that. They want to get additional recovery against the city for the same actions of that one actor. And that's where I was going. This is a several liability state. The non-deliberate duty doctrine has been applied very sparingly under very clear criteria. And I think even when it has been applied, the court has said we're only applying in this case where these elements are present. What if we define the duty of a second-class city as the obligation to maintain the peace and safety of the inhabitants of the city? If that were the duty, does that preclude the city from contracting for police services? You know, I think when you're talking about a city, you have to remember that this is a city of less than 700 people. I understand that. I saw the picture of downtown Quinnahawk, and it's a modest situation. It has been a struggle for these communities to provide any type of services. I understand that. So they've done the best they can. I think unless the State wants to provide them with funding to provide those services, I think there is an Alaska Supreme Court that says that cities are immune for liability with respect to decisions on allocation of scarce resources. And if they don't have the resources, I'm sure the community wants to keep the peace. So your argument is that in the face of the reality of no money, then they can't be held liable for anything related to whatever they do or do not do with regard to keeping the peace. I think with no resources, I don't think there's any liability for not being able to provide what they can't provide and what they weren't given the resources to provide. Given that the minimum requirements spelled out in Alaska statutes to retain the status of a second-class city, which is the term of the agreement, is there any minimum requirement spelled out in Alaska statutes with regard to police or maintaining the peace that is not outlined in the VPO statute? Not that I know of, no. I don't believe so. I think they had to keep a city clerk. I think that was it. And so they kept their clerk. I don't think anybody has any further questions. All right. Mr. Weiner, we'll give you the last word on the subject. Thank you, Judge. Judge Smith asked the question earlier, if there's no duty to have a police force or even a curfew, how can there be a non-delegable duty? And I think the answer to that is once a city undertakes a function, even though they don't have to, if it's a non-delegable function, then they remain responsible for that function. An example in another context is building roads. Local governments don't have to build a road anywhere, or they don't have to build a road here versus there. But if they choose to do that, and then if they fail to maintain it properly, they can be held liable for that. And that's a non-delegable duty. So the fact that the city of Quinnahock is not obligated by its status as a second-class city to hire police and have a curfew doesn't answer the question in our view. Instead, the question is if they chose to have an ordinance, a curfew ordinance on the books, which was the case here, and if they chose to hire a rent-a-cop through the tribe, which is the case here, and if that rent-a-cop was negligent, which was the case here, the city retains liability for that. Let me just ask a practical question, given all this talk about lack of resources. Is there an insurance policy here that would stand behind the city to indemnify them against it? Part of the memorandum of agreement required the tribe to buy insurance covering the city for claims like this. Okay, so there is an insurance policy that you might have a whack at if we allow the case to go forward. In fact, I believe counsel on the other side is paid by that insurance policy to appear before this court right now. Okay. Well, we didn't want you to come in here and do all you've done, just get zero, and you get to the end. That's right. All right. I think we understand the relative positions of the parties. Thank you both very much. That's a very interesting legal issue, and we'll work through it as best we can. We stand adjourned. Case is argued and submitted.
judges: Tashima, Tallman, Smith